Filed 10/27/23  Wagner v. Messana CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| DEBORAH WAGNER,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RUSSELL C. MESSANA et al.,<br><br>    Defendants and Appellants. | A165730<br><br>(Sonoma County<br>Super. Ct. No. SCV-267562) |

After the trial court granted respondent trustee's motion to compel documents, appellants refused to provide them on grounds they had not raised in their opposition to the motion.  Respondent then brought a motion for terminating and monetary sanctions.  The trial court declined to order terminating sanctions but ordered monetary sanctions against appellants and their attorneys.  We affirm.

1

# I.
## FACTUAL AND PROCEDURAL
## BACKGROUND

The background of this dispute occurred in 1999 when Theresa Messana Louvar created the Theresa Messana Louvar Trust (Trust).[1]  The Trust included a 9.37-acre long lot on Santa Rosa Avenue in Santa Rosa.  The lot is the site of a boat-and-storage business, TJ RV & Boat Storage (TJRV).  Louvar named as Trust beneficiaries her three children:  Charles Joseph Messana (Jody, who is not a party to this appeal), and appellants Russell Messana and Christine (Chris) Merkel.[2]  She later executed an amendment that established a "Separate Share Trust" for Jody.  That separate trust was to pay Jody $1,000 each month, with discretion to provide additional support.  The separate trust is to terminate on Jody's death, with any remaining trust property to be distributed to Jody's living issue or to his siblings if he dies with no issue.  Russell was appointed as trustee.  Russell became the manager of TJRV in 2004.  Louvar died in May 2012.

Respondent Deborah Wagner, a private professional fiduciary, was appointed trustee of the Separate Share Trust in March 2016 after Russell was removed as trustee following a court trial in a separate action.  Wagner encountered resistance from Jody's siblings as soon as she assumed her role and has attested that "every aspect of my duties has been unnecessarily

[1] Appellants have asked us to judicially notice the proceedings in this court in *Wagner v. Messana* (Mar. 11, 2022, A159310) [nonpub. opn.] (*Wagner I*).  The unopposed request is granted.  We decline, however, to take judicial notice of certain representations that Wagner made in her appellate briefing in *Wagner I*, as it appears that appellants are asking the court to take judicial notice of the truth of the matters asserted.

[2] In the interest of clarity, we refer to the family members by their first names.  Chris died in April 2021 (after the start of litigation), and her daughter (Amber Dee Merkel) and Russell were substituted in Chris's place.

2

problematic." Russell and Chris tried to have Wagner removed as trustee around two years after she was appointed, but their request was denied.

The probate court in the separate action naming Wagner as trustee also ordered that the Santa Rosa land be transferred to the trusts of each of the three siblings so that each had a one-third undivided interest as tenants in common. And it further ordered Russell to distribute TJRV out of the Trust to its beneficiaries' trusts, so that each would have a one-third undivided interest as tenants in common.

There is some dispute over exactly how the distribution of TJRV was effectuated. Public records suggest that TJRV was conveyed from the Trust into a limited liability company (LLC). Articles of incorporation were filed in June 2016 with the Secretary of State establishing "TJRV & Boat Storage, LLC."

Within a year of being appointed trustee of the Separate Share Trust, in February 2017, Wagner filed a petition for instructions regarding trust distributions. The petition asserted that the parties had discussed creating an LLC for the business but had reached an impasse since Russell and Chris insisted on majority rule for business and expenditure decisions, and Wagner was concerned that would leave Jody with no say in those issues. Russell and Chris opposed the petition. Although their opposition is not in the record, they apparently contended that TJRV had been operating as a general partnership and that the partners had filed articles of organization with the Secretary of State to establish an LLC. In her reply, Wagner stated that she had not signed any articles of organization and had not been made aware that such articles had been filed. She further attested that the "formation of the LLC ha[d] no effect currently on the business or the real property as the LLC has no assets." And she speculated it was "unlikely that the LLC will be

3

funded with the business and real property as the parties have been unsuccessful in reaching an agreement on the terms of the operating agreement for the LLC."

In May 2019, TJRV filed a fictitious business name statement with the Sonoma County clerk's office stating that "TJ Recreational Vehicle Storage" was owned by "TJRV & Boat Storage, LLC," and that the business was conducted by an LLC. "TJRV and Boat Storage LLC" files federal tax returns, though the business's accountant has attested that the Internal Revenue Service "does not recognize an LLC as a taxable entity," and that an LLC and a partnership are treated the same for income tax purposes. Wagner attested in this action that in her fiduciary capacity, she holds a one-third membership in the LLC, along with Russell and Chris.

Appellants dispute the business's status as an LLC, though. According to Russell, following the litigation that resulted in naming Wagner trustee, "[n]o portion of the ownership of TJRV . . . has been transferred into any limited liability company," and it "has operated as a general partnership" since it was distributed from the Trust to the Separate Share Trust, Russell, and Chris. Appellants have claimed in this litigation that Wagner made statements in a different case that TJRV was not, in fact, an LLC (an apparent reference to the statements in connection with her 2017 petition for instructions). They maintain that the "business TJRV has never been transferred to the LLC and the LLC has no ownership interest in TJRV." There apparently is no dispute that the parties were not able to form an operating agreement for TJRV. Russell claims this lack of agreement is why he never transferred the business into the LLC. He attested that he "now regret[s] 'jumping the gun' and taking these steps [to form an LLC] which I

4

now know were mistakes, because the owners of TJRV were never able to reach an agreement to have TJRV become a limited liability company."

As for the property that TJRV sits on, Wagner initiated partition proceedings in May 2017 in order to meet distribution and expense requirements of the Separate Share Trust. The court ultimately ordered that the property be partitioned by sale, and this court affirmed. (*Wagner I*, *supra*, A159310.)

A dispute also arose over the management of TJRV, which led to this current litigation. Quarterly reports summarizing the business's expenses showed that, as of the end of June 2020, TJRV had paid $250,000 for the attorney fees and costs of Russell and Chris. While the *Wagner I* partition action was pending, Wagner filed this separate suit in December 2020. She sued Russell and Chris for (1) breach of fiduciary duty, (2) damages for refusal to make distribution, (3) breach of fiduciary to company, (4) unjust enrichment, (5) waste of corporate assets, (6) abuse of control, (7) accounting, and (8) injunctive relief. Wagner alleged that Russell and Chris had "effectively been using [TJRV] as their personal bank account to wage and defend legal battles which they admit, including in pleadings before the Court, have nothing to do with TJRV." The complaint named TJRV as a defendant for derivative claims brought by Wagner as a member of TJRV on behalf of the company against the other members.

Appellants demurred to the complaint. They also filed a motion to strike allegations in the complaint regarding TJRV's status as an LLC, its assets, and whether Wagner was a member of TJRV. The trial court overruled the demurrer and motion to strike. As for Wagner's supposedly inconsistent previous statement that she was not aware of TJRV's articles of incorporation, the trial court found that the present allegations were "not

5

inherently contradictory and, moreover, do not take into account possible innocent explanations which the allegations may support, such as ignorance, or improper conduct by [appellants]." And as for the supposedly inconsistent previous allegation that the LLC had no assets, the trial court concluded that this statement also was "not inherently contradictory and may well be merely what she believed at the time."

Wagner noticed the deposition of the person at TJRV most knowledgeable (Code Civ. Proc., § 2025.230) to testify about (1) TJRV's payment of any attorney fees beginning in 2016, (2) agreements between TJRV with any law firm or individual attorney, (3) TJRV's form of legal entity, (4) management of TJRV, and (5) the corporate governance of TJRV. The notice also sought related documents. Appellants objected to the production of payment information or agreements with law firms because they claimed they were being asked to disclose information protected by the attorney-client privilege. Wagner then filed a motion to compel the information, which appellants opposed. The gravamen of their argument was that the requested documents were covered by the attorney-client privilege.

The trial court in January 2022 granted the motion to compel, which we sometimes refer to as the underlying discovery order. The court rejected appellants' arguments that Wagner lacked standing to obtain the documents because she was not a member/owner of TJRV, and it instead found that she "ha[d] provided evidence that [she] holds a one-third interest in the LLC." And the court agreed with Wagner that absent an operating agreement, the Corporation Code governs the operation of an LLC. (Corp. Code, § 17701.10, subd. (b).) Under the code, every member has the right to inspect and copy books and records related to the internal affairs of the LLC, including copies of financial statements and the LLC's books and records related to its

6

internal affairs. (Corp. Code, §§ 11701.13, subd. (d) [documents LLC must maintain], 17704.10, subd. (b) [each LLC member has right to inspect records].) The trial court further concluded that none of the LLC members could assert the LLC's privilege against another, meaning that appellants could not claim it against Wagner.

Wagner then again noticed the deposition of the person most qualified at TJRV to testify about the same topics Wagner previously noticed. TJRV indicated it would not produce any invoices reflecting attorney fees TJRV had paid or any agreements the business had with any attorneys or law firms. Their attorney attested that in response to Wagner's amended deposition notice, she reviewed hundreds of pages of bank statements for both the LLC and the partnership, which have separate bank accounts. She further attested that there was no indication that the LLC paid for any of the attorney fees or costs, and that "[a]ll such attorneys' fees and costs were paid by the Partnership, which is a separate entity and is not a party to this lawsuit." There were thus no responsive documents, according to the attorney, since "the partnership," and not the LLC, paid attorney fees. Counsel maintained that "TJRV and Boat Storage, LLC" was not the same entity as "TJRV and Boat Storage, the general partnership." And counsel said the trial court's conclusion that Wagner was a member of the LLC was based on Wagner's "false assertion" that the Separate Share Trust's interest in the business had been transferred into the LLC.

Wagner in February 2022 filed a motion for terminating and monetary sanctions, the subject of this appeal. Appellants opposed the motion. They argued for the first time that they were not producing documents because TJRV was a partnership. Appellants further argued that Wagner had sued the wrong entity since the LLC has paid no attorney fees, and they

7

maintained they had not violated the previous court order since the court had not ordered them "to produce records of the non-party partnership." (Formatting omitted.) And they sought sanctions against Wagner for "false[ly] claim[ing]" that they had violated the trial court's order and for her "refusal to heed the law and the facts."

The trial court (the same judge who had issued the underlying discovery order) issued a tentative ruling granting the motion for terminating and monetary sanctions (though less than what Wagner had requested).[3] But apparently a different trial judge conducted the hearing on the motion, and said at the end of the hearing he would "have to think about it more" and took the matter under submission.

The trial court (the judge who considered the motion at the hearing) was apparently concerned that Wagner had not gone forward with the person-most-qualified deposition after she learned that appellants would not be producing the disputed documents, and the court thus denied the request for terminating sanctions without prejudice. But it found that appellants had failed to comply with the underlying discovery order, and it ordered monetary sanctions against both appellants and their attorneys in the amount of $7,000, which was less than the $20,000 Wagner had requested in her motion. The court noted that in appellants' opposition to the original motion

---

[3] The tentative ruling was not included in the record on appeal, but Wagner seeks to augment the record with it. Appellants oppose the motion on the ground that a trial court's tentative ruling is not binding on the court and is superseded by the court's final order. (E.g., *Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 300.) But that argument goes to the relevance of the document and not whether it is the proper subject of augmentation, which it is. (Cal. Rules of Court, rule 8.155(a)(1)(A) [reviewing court may augment record to include "[a]ny document filed or lodged in the case in superior court"].)

to compel, they interchangeably referred to TJRV as a partnership and a corporation, "without actually making an assertion that there were two different entities, or raising any arguments based on such a position." The court further stated that "it has been clear throughout that one factual issue which [Wagner] has been trying to determine, and obtain through discovery, is information on the nature of the TJRV business entity, making it more clear that [appellants] knew of this and yet, instead of providing relevant, requested information, have been engaged in obfuscation and improper efforts to avoid discovery." The court found that appellants had "knowingly and willfully abused the discovery process in an apparent effort to maintain confusion and uncertainty regarding the business entities identified as 'TJRV' or 'TJRV & Boat Storage' or some form thereof, and they have willfully failed to comply with this court's [underlying discovery order]." Appellants appealed.[4] (Code Civ. Proc., § 904.1, subd. (a)(12) [appeal may be taken from order of monetary sanctions against party or attorney in amount exceeding $5,000].)

II.
DISCUSSION

Appellants argue that the trial court abused its discretion when it imposed monetary sanctions on them. (*O&C Creditors Group, LLP v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 561 [where there is basis for trial court's discovery ruling and evidence supports it, reviewing court will not substitute its opinion for trial court's].) We are not persuaded.

---

[4] Although the sanctions order was entered against both appellants and their attorneys, it does not appear that the attorneys appealed from the order. The initial notice of appeal did not list a party appealing, and the amended notice filed the same day listed only Russell and Russell and Amber in their representative capacities as co-trustees of the Trust. Appellants' civil case information statement likewise does not list the attorneys as parties.

9

Appellants devote the majority of their appellate briefing to an argument that does not bear on the sanctions order from which they appeal: whether the documents they were ordered to produce were covered by the attorney-client privilege. When Wagner initially moved to compel the production of these documents, she also sought her attorney fees and costs since, according to her, appellants' failure to produce the documents was without substantial justification. The trial court denied the request for fees and costs because it concluded that "there may be some justification for [appellants'] position and that this matter [i.e., the attorney-client privilege issue] is not wholly clear." In other words, they were not sanctioned for claiming the documents were privileged.

Appellants ask this court to "reverse[]" or "overturn[]" the order directing them to produce documents. But they did not challenge that order, even though they could have sought relief by way of a petition for a writ of mandate.[5] (E.g., *Los Angeles Gay & Lesbian Center v. Superior Court* (2011) 194 Cal.App.4th 288, 299–300 [writ review appropriate where discovery order will undermine a privilege].) Instead, they again refused to produce documents, relying on an entirely new theory, one they hardly touch on in their appellate briefing.

---

[5] Appellants rely on *People v. Landers* (2019) 31 Cal.App.5th 288, 310, which considered whether an attorney had a substantial justification for withholding what he argued was privileged material. But that appeal was taken directly from the order sanctioning the attorney for withholding the documents (*id.* at p. 295), as opposed to a subsequent order sanctioning the attorney for failure to comply with an order to produce the documents.

10

Thus even if we agreed with appellants that the documents at issue were privileged—an issue we need not and do not decide[6]—that is ultimately irrelevant to the reasons the trial court sanctioned them and their attorneys for failure to comply with the underlying discovery order. The trial court issued sanctions because appellants "ha[d] clearly and knowingly refused to comply with th[e] court's order on grounds which they had never raised and which on their face are not only clearly groundless but which appear spurious and in bad faith." Whether or not appellants initially had a valid argument that the requested documents were privileged, they were ultimately sanctioned for relying on a different, bad-faith argument why they were not obligated to produce the documents after they were ordered to do so.

Appellants ultimately do repeat on appeal the arguments they made below when they declined a second time to produce documents. They claim it was "impossible" for them to comply with the underlying discovery order since it compelled them to produce documents from the LLC, and "those documents do not exist." Again, the trial court concluded that this argument was raised "only . . . after the court order finding [appellants'] actual objections to be invalid and inapplicable, [which] demonstrates . . . that [appellants] have knowingly and in bad faith willfully failed to comply with this court's order and in bad-faith abuse of the discovery process." According to appellants, though, this was not "some new and spurious argument to excuse noncompliance" with the underlying discovery order because they "repeatedly and at every opportunity asserted their position that the LLC did not own assets and did not pay attorneys' fees, Wagner lacks standing to

---

[6] Because resolution of this issue is not necessary to this appeal, we deny appellants' request to take judicial notice of legislative history they claim is relevant to their privilege argument.

bring this action, and Wagner misjoined the LLC." In support of this assertion, they cite statements made in their pleadings filed in opposition to Wagner's application for a restraining order she sought early in these proceedings, their demurrer and motion to strike portions of Wagner's complaint, and their answer. But the order overruling their demurrer and denying the motion to strike made clear that Wagner's complaint could go forward even if there had been some confusion over the form of TJRV. Appellants also cite to statements made in meet-and-confer correspondence leading up to the *current* order (as opposed to the underlying discovery order), as well as statements made in opposition to the *motion for terminating sanctions*. Again, the whole reason appellants were sanctioned was because they failed to raise this argument in opposition to Wagner's original motion to compel.

True enough, in their opposition to Wagner's initial motion to compel, the *facts* section of their brief included statements that TJRV Boat & Storage, LLC owned no assets. And that section further represented that "TJRV Boat & Storage is a small, family-owned, *unincorporated* business." Russell similarly attested in his declaration supporting the opposition that no part of the TJRV business had been transferred to the LLC. But appellants did not argue that there were no responsive documents, only that such documents were privileged. The four substantive headings in the argument section of their original opposition were as follows: (1) "Wagner has the burden to show she is entitled to confidential communications," (2) "Wagner is not entitled to communications between [appellants] and their counsel," (3) "Wagner is not entitled to privileged communications with TJRV Boat & Storage, LLC," and (4) "Wagner's motion is without substantial justification." It was not until their opposition to the motion for terminating sanctions that appellants

12

argued they could not comply with the deposition notice because the LLC had no responsive documents. As the trial court noted when it imposed sanctions, appellants merely argued in opposition to the original motion to compel that "they did not need to produce the documents or provide the information due to work product or privilege, and they appeared to be generally using 'corporate or partnership' interchangeably to refer to TJRV, without actually making an assertion that there were two different entities, *or raising any arguments based on such a position.*" (Italics added.)

We also reject appellants' argument that the trial court's statement in the underlying discovery order that Wagner had presented evidence she is an owner of the LLC somehow deprives them of their "right to a jury trial on their affirmative defense that Wagner lacks standing to bring this action." The trial court found in the order appealed from that "[a]t this stage, with the information provided, it is impossible for the court to determine, and it is evidently not clear to the parties, whether there actually is a TJRV LLC, a TJRV partnership which has been formed but not named as a party in this lawsuit, or another TJRV business entity altogether. It is also unclear whether any party, or another TJRV business entity[,] is engaged in business under a TJRV fictitious business name and, if so, who is doing so." It stressed, though, that the requested documents go to the heart of this lawsuit. "Notably, even if there are no documents regarding payments by the LLC to attorneys, or agreements between the LLC and attorneys, [Wagner] also seeks documents on the 'form of legal entity for TJRV & Boat Storage' as well as its management and governance, documents which on the face of matters do seem likely to exist in some fashion. Even if they do not have such documents [appellants] *must do more than simply refuse to produce any by saying that the LLC was not involved in the events at issue.*" (Italics

13

added.)  In short, the court concluded that further discovery was crucial but did not foreclose any affirmative defenses appellants may have.

Because we affirm the trial court's sanctions order, we reject appellants' argument that the trial court erred by not ordering sanctions against Wagner for filing what they claim was a "frivolous and . . . bad faith" sanctions motion.  And as appellants apparently do not challenge the amount of the sanctions awarded, any argument about the figure has been forfeited.

III.

DISPOSITION

Wagner's June 9, 2023 motion to augment the record is granted.

Appellants' April 21, 2023 request for judicial notice is granted in part and denied in part as set forth in the opinion.

The order imposing sanctions on appellants is affirmed.  Wagner shall recover her costs on appeal.

14

_____

Humes, P.J.

WE CONCUR:


_____

Banke, J.



_____

Getty, J.*




*Judge of the Superior Court of the County of Solano, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*Wagner v. Messana*  A165730

15